UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| DIANA WILBANKS, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | 3:04-CV-02832-LSC |
| ] | |
| MICHAEL J. ASTRUE, ] | |
| Commissioner, ] | |
| Social Security Administration, ] | |
| ] | |
| Defendant. ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Diana Wilbanks, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. § 405(g).

Ms. Wilbanks was thirty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education and no GED or specific job training. (Tr. at 30, 208-9.) Her past work experiences

include employment as a cashier, sewing machine operator, and retail manager.  *Id.* at 25, 37, 209-11.  Plaintiff claims that she became disabled on January 15, 1997, due to high blood pressure resulting in lightheadedness, dizziness, and occasional stomach aches; painful swelling in her feet and legs; and gout in her feet preventing her from standing or sitting for prolonged periods of time.  *Id.* at 10, 24.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 404.1520(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the

analysis stops.   20 C.F.R. § 404.1520(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. § 404.1520(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.   *Id.*   If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.   20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.   20 C.F.R. § 404.1520(a)(4)(iv).   If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.   *Id.*   Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.   20 C.F.R. § 404.1520(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*

Applying the sequential evaluation process, the ALJ found that Plaintiff meets the nondisability requirements for a period of disability and DIB. (Tr. at 10.) The ALJ also found that Plaintiff was only insured through September 30, 2001, requiring her to establish disability on or prior to that date. *Id.* He further determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* at 11. However, the ALJ found that despite Plaintiff's allegations of high blood pressure and swelling and gout in her feet, she has had no impairments resulting in "vocationally relevant limitations" and therefore did not have any severe impairments during the relevant time period. *Id.* at 13. The ALJ concluded his findings by stating that Plaintiff "was not under a disability as defined in the Social Security Act, at anytime through the date of this decision." *Id.*

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act ("Act") is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the

correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."

*Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Plaintiff asserts six reasons that the ALJ's decision should be reversed and remanded.  (Doc. 18 at 7, 9, 12, 14-16, 19.)  First, Plaintiff contends that the ALJ failed to consider her obesity and neuromuscular disease on her ability to work.  *Id.* at 9, 12.  Second, Plaintiff argues that  the ALJ failed to apply the correct severity standard in finding no severe impairments.  *Id.* at 7.  Third, Plaintiff believes that the ALJ failed to consider the required factors for evaluating subjective complaints of pain.  *Id.* at 14.  Fourth, Plaintiff asserts that the ALJ erred by failing to consult a medical expert about Plaintiff's onset date.  *Id.* at 16.  Fifth, Plaintiff contends that the ALJ's credibility finding is not supported by substantial evidence.  *Id.* at 15. Finally, Plaintiff argues that the Commissioner erred by failing to file a complete record.  *Id.* at 19.

A.    Consideration of Obesity and Neuromuscular Disease.

Plaintiff argues that the ALJ failed to consider Plaintiff's obesity and neuromuscular disease on her ability to work.  (Doc. 18 at 9, 12.)  Regarding obesity, Social Security Ruling ("SSR") 02-01p states that, "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."  Although the ALJ clearly considered Plaintiff's hypertension, the ALJ's discussion of severity omits any discussion of Plaintiff's obesity.  This omission was error. *See Thomason  v. Barnhart*, 344 F. Supp.2d 1326, 1330 (N.D. Ala. 2004) (finding error where ALJ failed to consider Plaintiff's obesity and its effect on her impairments under SSR 02-01p); *Williams v. Barnhart*, 186 F.Supp.2d 1192, 1198 (M.D. Ala. 2002) (finding reversible error where ALJ failed to consider certain impairments); *see also Cameron v. Halter*, 6 Fed. Appx. 823, 824-25 (10th Cir. 2001) (finding error where ALJ failed to consider impairment at steps two and three); *Elliott v. Astrue*, 507 F.Supp.2d 1188, 1194-95 (D. Kan. 2007) (finding ALJ's failure to consider impairment at step two and remaining steps was error); *Waters v. Astrue*, 495 F.Supp.2d 512, 516 & n. 3 (D. Md. 2007) (same).

Regardless of whether Plaintiff specifically listed obesity as one of her impairments,[1] she has been diagnosed as obese on several occasions.  (*See* Tr. at 82, 85, 118, 191-92.)  During Plaintiff's July 1996 hospitalization for accelerated hypertension, Dr. Schuler's assessment included obesity.  *See id.* at 82.  In September of the same year, Dr. Schuler again noted Plaintiff's obesity.  *Id.* at 85.  Plaintiff was also diagnosed with obesity during her October 1999 treatment for a swollen ankle at Medical Center Shoals.  *Id.* at 118.  Although beyond the insured period, Plaintiff's January 2002 records from Russellville Hospital show that she was "morbidly" and "markedly" obese.  *Id.* at 191-92.

In addition to these diagnoses, Plaintiff testified that she was five feet eight inches tall and about 324 pounds.  *Id.* at 211.  When asked about her weight, Plaintiff stated that she had "been a fairly large woman for quite some time."  *Id.* at 212.  The ALJ remarked that "[w]e know what one of your impairments was."  *Id.* at 212.

---

[1]The record does not include a copy of Plaintiff's application for benefits.  (*See* Tr. at 1-2.)

The ALJ simply expressed no opinion as to the severity of Plaintiff's obesity.  The word "obesity" only appears once, mentioned tangentially during the ALJ's detailed analysis of Plaintiff's history of hypertension.  *Id.* at 11.  The ALJ's failure to consider or even address obesity as a part of his determination of severity was error.

Plaintiff also contends that the ALJ failed to consider her allegations of neuromuscular disease.  (Doc. 18 at 12.)  The ALJ must consider the combined effects of all impairments. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (finding that "it is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled").  Indeed, the ALJ must consider each impairment alleged by the claimant. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).  Further, the ALJ must articulate reasons for giving no weight to diagnoses accompanying test results. *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986).

Regardless of whether Plaintiff specifically listed neuromuscular disease as one of her impairments, the record shows a diagnosis of "[s]evere

[n]euromuscular [d]isease" at the N. W. Alabama Pulmonary Clinic in July 1996. (Tr. at 98.)  Plaintiff asserts that this diagnosis was based on pulmonary testing that revealed "increased RV/RLC ratio and a disproportionately reduced maximum voluntary ventilation [which] is consistent with respiratory muscle weakness."  *Id.*  Further, Plaintiff's attorney asked her about this diagnosis at the hearing, and she described having "a lot of wheezing" and being "dead out of breath" from "moving around a lot," such as walking from the hearing room to the parking lot. *See id.* at 218.  Despite the Plaintiff's medical record and testimony, the ALJ never mentioned neuromuscular disease in his opinion.  *Id.* at 10-13.

The July 1996 record showing Plaintiff's diagnosis, however, was a "preliminary report" presumably made by a technician.  *See id.* at 98 ("Technician: ABBY").  Further, an unsigned line for a doctor's signature appears at the bottom of the report just below the following notice: "This preliminary report should not be used clinically unless reviewed and signed by a physician."  *Id.*  However, these facts do not excuse the ALJ from at least addressing Plaintiff's allegations of neuromuscular disease.  After addressing Plaintiff's hypertension, the ALJ merely concluded that she had

no other vocationally relevant limitations.  *Id.* at 13.  The ALJ's express dismissal of Plaintiff's dizziness, nausea, and lower extremity swelling complaints suggests that he did not even address neuromuscular disease impliedly.  Accordingly, this Court finds that the ALJ failed to consider the impact of Plaintiff's allegations of obesity or neuromuscular disease -- either singularly or in combination with her other allegations -- on her ability to work.

>    B.    Evaluation of Severity.

Plaintiff contends that the ALJ failed to apply the Eleventh Circuit's severity standard set forth in *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984).  (Doc. 18 at 7.)  Plaintiff further asserts that the ALJ would have found Plaintiff's combination of impairments "severe" if he had properly applied the standard.  *Id.*  An impairment or combination of impairments is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  *See* 20 C.F.R. § 404.1520(c).  Basic work activities are those abilities and aptitudes necessary to perform most jobs.  *See* 20 C.F.R. § 404.1521(b).  An impairment or combination of impairments is not severe "when medical evidence establishes only a slight abnormality or a

combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Soc. Sec. Ruling 85-28. An impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady*, 724 F.2d at 920. The court of appeals has subsequently described the severity standard as "de minimis." *See Stratton v. Bowen*, 827 F.2d 1447, 1452-3 (11th Cir. 1987) (noting that "an overly stringent interpretation of the threshold severity requirement violates the statutory standard for disability").

In *McDaniel v. Bowen*, the Eleventh Circuit reviewed an ALJ's finding that the claimant's impairment was not severe. *See* 800 F.2d 1026, 1030 (11th Cir. 1986). In remanding the case, the court emphasized that, *taken as a whole*, the ALJ's findings could not be fairly construed as an application of *Brady*. *Id*. at 1031. Despite the ALJ's "careful consideration of the record," the court criticized the absence of any cite, quote, or paraphrase of the *Brady* standard. *Id*. The court clarified the *Brady* standard,

explaining that a "[c]laimant need show only that her impairment is not so slight and its effect is not so minimal."  *Id.*

Like the ALJ in *McDaniel*, the ALJ in the present case did not expressly state the *Brady* standard, referencing only the regulations instead.  The ALJ began his severity analysis by stating that "[a]n impairment is severe *within the meaning of the regulations* if it imposes significant restrictions in the ability to perform basic work activities."  (Tr. at 11 (emphasis added).)  The ALJ concluded that Plaintiff did not have "an impairment or a combination of impairments considered 'severe' *based on the requirements in the Regulations* . . . ."  *Id.* at 13 (emphasis added).

Despite the lack of a *Brady* reference, a representation of the *Brady* standard is not strictly required.[2]  S*ee McDaniel* at 1031 n.5.  The ALJ's language indicates that he effectuated the proper standard silently.  The ALJ remarked that there was "minimal" evidence to support Plaintiff's reports of swelling in her legs.  (Tr. at 13.)  The ALJ also acknowledged that

---

[2]While the Fifth Circuit presumes that an ALJ has applied an incorrect severity standard if the ALJ does not expressly reference the Fifth Circuit's standard or does not present the same construction of the regulation, *see Stone v. Heckler*, 752 F.2d 1099, 1104 (5th Cir. 1985), the Eleventh Circuit has expressly rejected such a presumption. *See* 800 F.2d at 1031 n.5.

Plaintiff's "long history of hypertension" was under "fair to good control" and had resulted in "*no* vocationally relevant limitations."  (Tr. at 12-13 (emphasis added).)  Further, the ALJ concluded that Plaintiff has had "*no* other impairments that have resulted in vocationally relevant limitations."  (Tr. at 13 (emphasis added).)  The ALJ's findings, *taken as a whole*, can be fairly construed as an application of *Brady*.

C.      Consideration of Required Pain Factors.

Plaintiff contends that the ALJ failed to consider the required factors for evaluating subjective complaints of pain.  (Doc. 18 at 14.)  The ALJ must consider symptoms such as "pain, fatigue, shortness of breath, weakness, or nervousness" in his determination of whether an impairment or combination of impairments is severe.  20 C.F.R. § 404.1529(d)(1).  The regulations require that an ALJ consider the following factors:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Since Plaintiff alleges this failure with little specificity, this Court will address the ALJ's substantial use of the factors in general.  The ALJ provided a detailed account of Plaintiff's medical history, which included all of the relevant factors listed above.  The ALJ noted Plaintiff's treatment for chest pain in March 1999, but he presented her high blood pressure and diagnosis of reflux esophagitis as precipitating and/or aggravating factors. (*See* Tr. at 11.)   The ALJ also noted that in October 1999, Plaintiff experienced a swollen right ankle that led to tenderness.  *Id*.  The ALJ remarked that Plaintiff was diagnosed with phlebitis of the right ankle, obesity, and hypertension and was instructed to "soak and elevate her leg." *Id*.  The ALJ wrote that Plaintiff has been on medication since 1996 that "causes her to go to the bathroom every 20 minutes for about 3 hours."  *Id*. at 12.  The ALJ also remarked that Plaintiff has dizziness and nausea when her blood pressure is elevated and must elevate her legs when her feet

swell.  *Id*.   However, the ALJ noted that Plaintiff has never reported

dizziness and nausea to her treating physician.  *Id*. at 13.  "With regard to

daily activities," the ALJ wrote, "the claimant testified that she does light

housekeeping [but] does not go on long trips because she cannot walk long."

*Id*. at 12.  The ALJ further noted that "the longest period she is out at one

time is one to two hours," shopping only for short periods of time.  *Id*.

Accordingly, this Court finds substantial evidence that the ALJ considered

the requisite factors.

     D.    Determination of Disability Onset Date.

Plaintiff asserts that the ALJ erred by failing to consult a medical

expert regarding the onset date of her disability.  (Doc. 18 at 16.)   In

support of her argument, Plaintiff argues that the ALJ did not follow SSR 83-

20,[3] which directs the ALJ to refer to a medical advisor when a remote onset

---

[3]"Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the [Social Security] Administration.'"  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (quoting 20 C.F.R. § 422.408 (1989)).  On the other hand, agency rulings "do[ ] not bind this [C]ourt." *Miller v. Comm'r of Soc. Sec.*, 246 Fed. Appx. 660, 662 (11th Cir. 2007) (quoting *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr. 27, 1981)).  "'Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same.  A ruling may be superceded, modified, or revoked by later legislation, regulations, court decisions or rulings.'"  *Id.* (quoting *Heckler v. Edwards*, 465 U.S. 870, 874 (1984)).

date must be inferred.[4]  *Id*.  Plaintiff contends that the onset date was unclear due to limited medical evidence and the lack of medical review by a State agency physician.  *Id*.

SSR 83-20 states:

*In addition to determining that an individual is disabled,* the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.

Soc. Sec. Ruling 83-20 (emphasis added).  The onset date for disability is the date that the medical evidence shows that the claimant's disabling conditions met the statutory definition of disability.  *See id*.  The premise behind this ruling is that the ALJ has found the person disabled.  Once disability is determined, the medical advisor is retained to determine when

---

[4]Although other circuits have interpreted the medical expert provision of SSR 83-20, the Eleventh Circuit has not yet done so.  *See McManus v. Barnhart*, No. 5:04-cv-67-Oc-GRJ, 2004 WL 3316303 at *6 (M.D. Fla. Dec. 14, 2004).  The pertinent provision reads:

How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred.

Soc. Sec. Ruling 83-20.

the condition became disabling for the purpose of awarding benefits.  If the ALJ determines that a person was not disabled prior to the expiration of their insured status and that decision is supported by substantial evidence and proper application of the law, no benefits are awarded.  There is then no obligation to infer a remote onset date.  Since there was no finding of disability in this case, there was no reason to obtain a medical advisor's opinion in regard to onset.  The only remaining question is whether the finding of no disability was supported by substantial evidence.

There is substantial evidence to show that Plaintiff was not disabled at any time prior to her date last insured.  The ALJ noted that Plaintiff's blood pressure was extremely high during only one of six emergency room visits and that it was kept "under fair to good control" with medication. (Tr. at 12.)  The ALJ also pointed out a treating doctor's doubts that she was compliant with medications.  *Id*.  The ALJ further remarked that the evidence showed no end organ damage due to her hypertension.  *Id*.

Regarding Plaintiff's other complaints, the ALJ highlighted a normal renal ultrasound in July 1996, noting that her kidneys were equal in size. *Id*.  The ALJ also stated that Plaintiff never reported dizziness or nausea

from her hypertension to her treating physician. *Id.* at 12-13. Further, the ALJ addressed the "minimal evidence" to support Plaintiff's claims of leg swelling, noting the single occurrence of ankle phlebitis during the relevant time period. *Id.* at 13. Accordingly, this Court finds there was substantial evidence to support the ALJ's finding of no severe impairments during the relevant time period. Therefore, since no disabling condition was established at any time which could reasonably infer an onset of disability prior to September 30, 2001, the ALJ did not err in failing to obtain a medical expert opinion of remote onset date.

    E.    Determination of Credibility Finding.

Plaintiff contends that the ALJ's credibility finding is not supported by substantial evidence. (Doc. 18 at 15.) The ALJ found Plaintiff's allegations of being prescribed Lasix and experiencing dizziness, nausea, and lower extremity swelling during the relevant time period not credible. (Tr. at 13.) Plaintiff points to many places in the record that document her Lasix medication. (*See* Doc. 18 at 15 (citing Tr. at 29, 107, 110, 114, 119, 129, 148, 179, 191).) Plaintiff also purports that one record "documents the

presence of edema or swelling" in the relevant time period.  *Id.* (citing Tr. at 118).  This Court is not persuaded.

The ALJ noted the lack of evidence to support Plaintiff's claim of being "*prescribed* Lasix" to treat her blood pressure, not of merely using the drug.  (Tr. at 13 (emphasis added).)  Plaintiff only offers instances where healthcare professionals noted her own reports of taking the medication. There is no evidence of a Lasix *prescription*.  Further, although Plaintiff highlights a treatment record showing a handwritten note that reads "swelling R ankle," a box is marked "no" next to "edema of legs."  (*See* Tr. at 118.)  Accordingly, this Court finds substantial evidence to support the ALJ's finding.

F.      Filing of Incomplete Record.

Plaintiff argues that the Commissioner erred by failing to file a complete record.  (Doc. 18 at 19.)  Plaintiff specifically points out that the record only contains Exhibits 1E through 5E and Exhibits 1F through 10F, despite the ALJ admitting exhibits 1A through 10F into evidence at the hearing.  (Tr. at 1-2, 206.)  The Act requires that, if a hearing is held, the Commissioner affirm, reverse, or modify the original findings on "evidence

adduced at the hearing." *See* 42 U.S.C. § 405(b)(1).  The Act further

provides that, "[a]s part of the Commissioner's answer the Commissioner of

Social Security shall file a certified copy of the transcript of the record

including the evidence upon which the findings and decision complained of

are based."  However, the Eleventh Circuit has reasoned that an error is

harmless if it is irrelevant to the outcome of the court's analysis.  *See Diorio*

*v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).  "'Harmless errors are those

that do not affect the ALJ's determination that a claimant is not entitled to

benefits.'"  *Woodard v. Apfel,* No. Civ.A. 99-0926-RV-L, 2001 WL 102354

(S.D. Ala. Jan. 8, 2001) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th

Cir. 1990)).

     This Court will assume that the ALJ had the entire record--exhibits 1A

through 10F--when making his determination of disability. (*See* Tr. at 206.)

Plaintiff does not allege otherwise.  (*See* Doc. 18 at 19.)  However, if the

Commissioner committed procedural error by not filing certain exhibits,

those that were missing were not material to this Court's analysis of any of

Plaintiff's allegations.  A comprehensive record was not required for this

Court to remand on the issue of the ALJ's consideration of Plaintiff's obesity

and neuromuscular disease.  Further, this Court found substantial evidence that the ALJ used the proper severity standard and properly considered the pain factors in his opinion, which was included in the record.  Also, the ALJ's opinion alone provided substantial evidence to support his onset date determination and credibility findings.  Plaintiff has not been prejudiced by any exclusion of evidence, and any error was therefore harmless.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Ms. Wilbanks's arguments, the Court finds the Commissioner's decision is not supported by substantial evidence or in accord with the applicable law. Therefore, this case will be remanded by a separate order consistent with this opinion to consider of Plaintiff's allegations of obesity and neuromuscular disease in the severity analysis.

Done this 4th day of August 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671